TERRANCE JOHNSON, #R15112,    )
    )
        Plaintiff,    )
    )
vs.    )    Case No. 19−cv−00444−SMY
    )
LT. DYE,    )
C/O HUGHEY,    )
LT. BROOKMAN,    )
WARDEN LASHBROOK,    )
JOHN DOE,    )
JOHN BALDWIN,    )
JASON HART,    )
SHERRY BENTON, and    )
LARISSA WANDRO,    )
    )
        Defendants.    )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Terrance Johnson, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983. He alleges deprivations of his constitutional rights arising from the issuance of an Inmate Disciplinary Report and a guilty verdict by the Adjustment Committee resulting in disciplinary segregation. He requests a declaratory judgment and money damages.

Plaintiff's Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1): On May 10, 2018, Internal Affairs conducted a shakedown of Plaintiff's cell and he and his cellmate, Reed, were questioned separately regarding an investigation into tobacco trafficking. Plaintiff was questioned on whether he ever saw Reed with any tobacco and was taken to segregation and placed under investigation. *Id.* at pp. 3-4.

On May 21, 2018, Lieutenant Dye and Corrections Officer Hughey interviewed Plaintiff about tobacco that was found in the North Lower Cell House. Hughey told Plaintiff that if he told Hughey what he knew about Reed's involvement with selling tobacco or the name of the staff member supplying the tobacco, he would be released from segregation. *Id.* at p. 5. After Plaintiff repeated that he did not know anything about the tobacco, Dye told him that if he "couldn't help [them], we can't help you." *Id.* at pp. 5-6.

A few days later, following another interview with Hughey and Dye in which Plaintiff again stated that he did not know anything regarding Reed's involvement with trafficking tobacco, Plaintiff received a disciplinary report. The charged violations in the report were supported by unknown confidential informants, insufficient facts, and a false statement that Plaintiff had admitted to violating state and federal law. *Id.* at p. 7.

On the day of the disciplinary hearing, Plaintiff submitted a written statement from another inmate named Harris to the Adjustment Committee ("Committee"). In his statement, Harris recanted previous claims he had made regarding Plaintiff's involvement in tobacco possession and stated that he, Harris, had placed the tobacco in the gutter that was found in the North Lower Cell House. *Id.* at p. 8. The Committee, composed of members Brookman and Hart, found Plaintiff guilty of bribery and extortion, impeding or interfering with an investigation, drugs and drug paraphernalia, and violating state or federal law. *Id.* at pp. 8, 33.

Plaintiff filed a grievance challenging the disciplinary report, investigation, and disciplinary

action imposed by the Committee, but Grievance Officer Wandro and Warden Lashbrook denied the grievance. *Id.* at pp. 9, 40. Plaintiff appealed to the Administrative Review Board ("ARB"). The ARB upheld one of the charges, "possessing contraband -tobacco- within a penal institution in violation of state law," but overturned the other three charges due to failure to comply with procedural due process safeguards. *Id.* at pp. 9, 42.

While in segregation, Internal Affairs packed and stored a majority of Plaintiff's property, depriving him of his property for the four months he was in segregation. *Id.* at pp. 9, 17. Upon release from segregation, Plaintiff received back about half of the property that had been confiscated; the other half was lost by Internal Affairs. *Id.* at 17.

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts:

**Count 1:** First Amendment retaliation claim against Dye, Hughey, and Internal Affairs Supervisor John Doe for drafting a false disciplinary report and persuading another inmate to submit a fabricated statement against Plaintiff when he did not provide information in the tobacco trafficking investigation.

**Count 2:** Fifth Amendment claim against Dye, Hughey, and Internal Affairs Supervisor John Doe for drafting a false disciplinary report and persuading another inmate to submit a fabricated statement against Plaintiff in an attempt to compel him to give self-incriminating information during the tobacco trafficking investigation.

**Count 3:** Fourteenth Amendment procedural due process claim against Dye, Hughey, and Internal Affairs Supervisor John Doe for filing a false disciplinary report.

**Count 4:** Fourteenth Amendment procedural due process claim against Brookman, Hart, and Lashbrook for disregarding constitutionally required procedures while conducting the disciplinary hearing.

**Count 5:** Fourteenth Amendment due process claim against Wandro, Baldwin, and Benton[1] for affirming the unconstitutional process used by the Adjustment Committee during Plaintiff's disciplinary hearing and upholding the retaliatory

---

[1] Plaintiff also directs this claim towards an individual named "Burle" who is not listed in the case caption or named elsewhere in the Complaint. (Doc. 1, p. 15). The Court will not treat parties not listed in the caption as defendants, and any claims against them are considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

actions of Dye, Hughey, and Internal Affairs Supervisor John Doe. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under Twombly.**[2]

### Discussion

### Count 1

To prevail on his First Amendment retaliation claim, Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). Prisoners retain First Amendment rights that are not inconsistent with "'the legitimate penological objective of the corrections system[,]'" and the Seventh Circuit has stated that "[t]ruthfully answering questions during an investigation, even if those answers are not what the officers want to hear, is consistent with a prison's penological objectives." *McKinley v. Schoenbeck*, 731 F. App'x 511, 514 (7th Cir. 2018)(quoting *Pell v. Procunier,* 417 U.S. 817, 822 (1974) (citations omitted)).

Plaintiff has set forth sufficient allegations to proceed on a retaliation claim against Hughey and Dye. However, Count 1 will be dismissed as to Internal Affairs Supervisor John Doe ("John Doe").

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This includes Plaintiff's claim that the Adjustment Committee did not have the authority to find him guilty of violating a state or federal law. (Doc. 1, p. 16). There seems to be confusion over a criminal conviction in violation of state or federal law and being found guilty of violating a prison policy by the Adjustment Committee. Plaintiff was ultimately charged for violating a prison policy that prohibits conduct that would constitute a state or federal violation, not a criminal statute. *See* Ill. Admin. Code tit. 20, § 504 Appendix A. Because prisons have great "deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security[,]" *Thomas v. Ramos,* 130 F.3d 754, 764 (7th Cir. 1997) (quoting *Bell v. Wolfish,* 441 U.S. 520, 547 (1979)), the Adjustment Committee has the authority to discipline inmates.

Plaintiff is not required to know the names of individual defendants, but he must describe the "who, what, why, where, and how" that form the basis of the claim against that person. In a section of the Complaint titled "Memorandum of Law in Support of Claims[:] Retaliation Claims" Plaintiff alleges that Dye, Hughey, and John Doe drafted the false disciplinary report and coerced another inmate to implicate him in the involvement of tobacco trafficking, (Doc. 1, p. 10), but provides no other supporting facts in the Complaint regarding John Doe's conduct or involvement in the investigation or issuance of the disciplinary report. John Doe is also not mentioned in the "Statement of Facts" section of the Complaint, in which the Plaintiff describes what happened to him and the alleged retaliatory conduct of Hughey and Dye. When a plaintiff does nothing more than suggest a "sheer possibility" that someone harmed him, he has not done enough to state a claim against a defendant. *Ashcroft v. Iqbal,* 556 U.S. 661, 678 (2009).

To the extent that Plaintiff is attempting to hold John Doe liable because he is the Supervisor of Internal Affairs, this claim fails as well. A defendant cannot be liable merely because he or she supervised a person who caused a constitutional violation. *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). For these reasons, Count 1 will proceed against Dye and Hughey, but will be dismissed without prejudice as to John Doe.

**Count 2**

Plaintiff claims he was engaged in Fifth Amendment activity when he "refused to incriminate himself or cooperate as an informant for defendants Dye, Hughey, and John Doe IA Supervisor, and also when [he] gave a statement in denying his involvement in criminal activity." (Doc. 1, p. 11). Plaintiff alleges that during the investigation, Dye told him that if "he did not tell them about Reed's involvement with the trafficking tobacco and the source of the tobacco, then he would receive the same disciplinary report as Reed," *Id.* at p. 6, and Hughey told him he would be released from segregation if he provided information. *Id.* at p. 5.

Prison officials may not retaliate against someone for giving truthful testimony. They also may not attempt to override the Fifth Amendment privilege against self-incrimination by compelling testimony, even at a prison disciplinary hearing. *See Lefkowitz v. Cunningham,* 431 U.S. 801, 806 (1977); *Vermillion v. Levenhagen,* 604 F. App'x 508, 512 (7th Cir. 2015); *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976). Therefore, Plaintiff has sufficiently alleged that Defendants Hughey and Dye retaliated against him for excising his Fifth Amendment right against self-incrimination. However, for the same reasons stated with respect to Count 1, he has failed to provide enough factual allegations regarding the conduct of John Doe. Accordingly, Count 2 will proceed against Dye and Hughey and will be dismissed without prejudice as to John Doe.

### Count 3

When an inmate brings an action under 28 U.S.C. § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court reviewing a due process claim must conduct a two-part inquiry: (1) was there a protected interest at stake that necessitated the protections demanded by due process; and (2) was the disciplinary hearing process conducted in accordance with procedural due process requirements?

Plaintiff alleges that Dye, Hughey, and John Doe drafted and filed a false disciplinary ticket, violating his due process rights. But a falsely issued disciplinary ticket does not violate the Fourteenth Amendment if the inmate receives procedural due process in the disposition of the ticket. *Hanrahan v. Lane,* 747 F.2d 1137, 1140 (7th Cir. 1984). Here, whether the procedures employed during Plaintiff's disciplinary proceedings violated due process need not be considered at this juncture because Plaintiff has failed to plead that a protected interest was at stake. Plaintiff alleges he was demoted to C-grade, placed in segregation for four months, had restricted commissary privileges, and lost his job in prison industries. However, there is no protected liberty interest implicated in demotion to C-grade status, loss of commissary privileges, or in retaining a job. *See Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th

Cir. 1997) (collecting cases) (there is no protected liberty interest implicated in demotion to C-grade status or loss of certain privileges); *DeWalt v. Carter,* 224 F.3d 607, 613 (2000) (prisoners do not have a liberty or property interest in their jobs).

Plaintiff does claim that his four months in disciplinary segregation exposed him to "atypical and significant hardship," (Doc. 1, p. 16), but, other than stating that certain privileges were prohibited and that he was limited to two showers and recreation periods per week, he does not describe or assert factual allegations regarding the conditions of his confinement that he believes constituted atypical and significant hardships in violation of the Constitution. *See Vasquez v. Braemer,* 586 F. App'x 224, 228 (7th Cir. 2014)("Allowing inmates only two showers and four hours of outside recreation each week does not violate the Eighth Amendment.") (citations omitted). The Seventh Circuit Court of Appeals has previously concluded four months in segregation, standing alone, does not implicate a protected liberty interest, *Beamon v. Pollard,* 711 F. App'x 794, 795 (7th Cir. 2018), and that simply pleading that imposition of disciplinary segregation, "without additional facts about the conditions of confinement, would not implicate a liberty interest." *Miller v. Maue*, 759 F. App'x 515, 516 (7th Cir. 2019) (citations omitted). Thus, Plaintiff has failed to allege he was deprived of a protected liberty interest while in segregation.

Plaintiff also claims that because of an unconstitutional disciplinary proceeding which sanctioned him with segregation, he was denied his property for four months and some of his property was never returned to him after he was released from segregation. But if the state provides an adequate remedy for Plaintiff's lost property, he has no viable civil rights claim. *Hudson v. Palmer,* 468 U.S. 517, 530-36 (1984). Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington,* 193 F.3d 510, 513 (7th Cir. 1999); *Turley v. Rednour,* 729 F.3d 645, 653 (7th Cir. 2013). Accordingly, Plaintiff must pursue any claims regarding the deprivation of his property in the Illinois Court of Claims. Count 3 will be dismissed without prejudice.

**Count 4**

Plaintiff claims that Adjustment Committee Members Brookman and Hart and Warden Lashbrook deprived him of a protected liberty and property interest without due process by conducting the disciplinary hearing without satisfying constitutional requirements. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). Specifically, he alleges that: (1) he was not adequately notified of charges against him; (2) the Committee relied on false information that the Plaintiff had admitted to trafficking tobacco and so was therefore not impartial; and (3) the Committee did not evaluate the testimony of inmate, Harris, who had admitted to being the person who placed the tobacco in the North Lower Cell House effectively depriving Plaintiff of the right to call a witness. The Court need not consider whether Plaintiff has stated a viable claim against the Adjustment Committee as the Court previously concluded that Plaintiff has failed to assert a protected liberty interest in the conditions of confinement in segregation and that the state of Illinois affords Plaintiff a remedy to address the alleged deprivation of his property. Accordingly, Count 4 will be dismissed without prejudice.

**Count 5**

Plaintiff also claims that Grievance Officer, Wandro, Administrative Review Board member, Benton, and Director of IDOC, Baldwin, violated his Fourteenth Amendment rights by denying his grievances regarding the unconstitutional disciplinary proceedings and the retaliatory conduct of Defendants Hughey, Dye, and John Doe. He alleges these defendants failed in their duty to review and reverse the arbitrary and unsupported findings of the Committee.

Because prison grievance procedures are not constitutionally mandated and do not implicate the Due Process Clause per se, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011). Additionally, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *Id.* Some personal involvement beyond the grievance process is

necessary. *Haywood v. Hathaway*, 842 F.3d 1026 (7th Cir. 2016). Plaintiff does not provide any facts in his statement of claim that suggest these defendants had any personal involvement in the alleged retaliatory conduct of due process violations involving the disciplinary proceedings, aside from processing and/or denying his grievances. Moreover, to the extent Plaintiff seeks to hold these defendants liable because of their supervisory positions, as previously noted, individual liability under § 1983 cannot be based on a theory of *respondeat superior. Kinslow,* 538 F.3d at 692. For these reasons, Count 5 will be dismissed without prejudice.

### **Motion for Recruitment of Counsel**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED**.[3] Plaintiff did not provide sufficient information for the Court to determine if he has made a reasonable effort to obtain counsel on his own. He merely states that he has written to three attorneys and that he has not received any responses. With respect to his ability to pursue this action *pro se*, Plaintiff indicates that he has does not fully understand legal terms and case law. Nonetheless, the Court finds that Plaintiff is capable of proceeding *pro se*, at least for now. Plaintiff's pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. The Court will remain open to the appointment of counsel in the future. Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to: (1) contact at least three attorneys regarding representation in this case prior to filing another motion; (2) include in the motion the names and address of at least three attorneys he has contacted; and (3) if available, attach the letters from the attorneys who declined representation.

---

[3] In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

**<u>Disposition</u>**

**IT IS HEREBY ORDERED** that the Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that **Counts 1** and **2** shall proceed against **DYE** and **HUGHEY.** **Counts 1** and **2** are dismissed without prejudice as to **JOHN DOE.**

**IT IS FURTHER ORDERED** that **Counts 3, 4,** and **5** are dismissed without prejudice for failure to state a claim upon which relief can be granted.

Because there are no other claims against **JOHN DOE, BROOKMAN, LASHBROOK, BALDWIN, HART, BENTON,** and **WANDRO,** they are **DISMISSED** without prejudice from the action. The Clerk of Court is **DIRECTED** to terminate these individuals as Defendants in the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **DYE** and **HUGHEY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint

and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

This entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(1), (2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 8/8/2019**

_____ *s/ Staci M. Yandle* _____
**STACI M. YANDLE**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**