## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **TERRANCE JOHNSON,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **vs.** | **)** | **Case No. 3:19-cv-00444-GCS** |
| | **)** | |
| **JONATHAN DYE and KYLE** | **)** | |
| **HUGHEY,** | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Terrance Johnson is an inmate in the custody of the Illinois Department of Corrections ("IDOC") and is currently housed at Hill Correctional Center. On April 24, 2019, Plaintiff filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants Dye and Hughey retaliated against him and denied him due process during a tobacco trafficking investigation at Menard Correctional Center ("Menard") in violation of the First, Fifth, and Fourteenth Amendments. (Doc. 1). Defendants Dye and Hughey have asserted that they identified Plaintiff as involved in the tobacco trafficking on the basis of four confidential informants: (i) "Harris," (ii) "Ganus," (iii) an unnamed informant interviewed on May 16th ("CI 1"), and (iv) a second unnamed informant listed in the Report of Investigation ("ROI") and interviewed on May 12th ("CI 2"). (Doc. 64, p. 6).

Plaintiff initially served a subpoena on Warden Antony Wills in order to, *inter alia*, determine the identities of the unnamed informants. (Doc. 119, p. 3).[1] At that time, Warden Wills was not a party to this suit; Plaintiff has since amended his complaint to add Defendant Wills in his official capacity. *See* (Doc. 111). Now before the Court is Defendant Wills's motion to quash the subpoena (Doc. 59) and accompanying supplement, which Defendant Wills provided after Plaintiff added him to the litigation. (Doc. 117). For the reasons delineated below, Defendant Wills's motion to quash is **DENIED.**

## BACKGROUND

Plaintiff alleges that during the investigation of tobacco trafficking at Menard, Defendants Hughey and Dye issued Plaintiff a disciplinary report predicated on insufficient facts, false statements, and information from unknown confidential informants. (Doc. 14, p. 2). The investigation at issue began after an officer found chewing tobacco at Menard in May 2018. (Doc. 64, p. 6). The Report of Investigation states that the officer who found the tobacco followed a lead provided by a confidential source. *Id*.

The disciplinary ticket received by Plaintiff states that two confidential sources identified Plaintiff as responsible for the tobacco trafficking. (Doc. 64, p. 6). One of the sources allegedly implicated Plaintiff prior to the discovery of tobacco, while the other identified Plaintiff during the following investigation. *Id*. The Report of Investigation

---

[1] Although the initial motion to quash also requested Court intervention in the production of certain additional documents, the parties have since resolved disputes over these items without the need for further Court involvement. *See* (Doc. 117, p. 2 n.3); (Doc. 119, p. 6 n.1). Accordingly, to the extent that ruling on these items is necessary, the Court finds that the motion to quash is MOOT as it pertains to subpoena requests three through six.

identifies interviews with four named offenders: Christopher Harris ("Harris"), Victor Ganus ("Ganus"), Plaintiff's cellmate Derrondas Reed ("Reed"), and Plaintiff. *Id.* at p. 7. Harris implicated himself, Ganus, and Reed in the trafficking. *Id.* Ganus implicated Harris and Reed. *Id.* Both Reed and Plaintiff stated that they had no information to provide. *Id.* None of the four interviewees implicated Plaintiff in the trafficking. *Id. See also* (Doc. 101, p. 2). During his deposition, however, Defendant Dye indicated that both Harris and Ganus had implicated Plaintiff, though he was unsure whether the interview in which they did so was documented. (Doc. 56, p. 2; Doc. 72, p. 2).

The unnamed confidential sources allegedly identified Reed and Plaintiff as tobacco traffickers after Plaintiff denied knowledge of the trafficking. (Doc. 64, p. 7, 9). The ROI reflects that Officer Nathan McCarthy interviewed CI 1 on May 16th, while Defendant Dye interviewed CI 2 on May 12th. (Doc. 64, p. 9). CI 2 initially identified Plaintiff, while CI 1 confirmed CI 2's statements. *Id.* However, during his deposition, Defendant Dye also indicated that CI 2 had identified Plaintiff on May 9th prior to his May 12th interview. *Id.* He also stated that he did not recall the full interview with CI 2 prior to May 12th, and that the best way to determine what information CI 2 provided investigators would be to ask him directly. *Id.* Although Defendant Dye recalled Defendant Hughey's presence at both CI's interviews, Defendant Hughey stated that he was not there for either interview. *Id.* at p. 10. Equally, Officer McCarthy was unable to recall information about his interview with CI 1, including the informant's identity or the way in which the informant confirmed the statements from CI 2. *Id.*

Although it is common practice for the identifies of confidential informants to be shared with a supervisor, Officer Schoenbeck, who is a supervisor for Defendants Dye and Hughey, testified that neither of the informant's identities were shared with him. (Doc. 119, p. 10). These identities were also not shared with Officer Curry in her preparation of the ROI. *Id.* Accordingly, though Plaintiff has attempted to solicit information about the informants through other means, he has not been successful. *Id.*

Though Harris and Ganus were named in the Report of Investigation, Defendant Dye asserted that both witnesses were also confidential informants in the investigation. *Id.* at p. 8. On June 11, 2018, Harris provided a notarized affidavit stating that Defendants coerced him into identifying Reed and Ganus as responsible for the trafficking. (Doc. 1, p. 27-30). Harris provided this document to Plaintiff, and it is attached to Plaintiff's complaint. (Doc. 1). Harris does not state in the affidavit that he implicated Plaintiff; however, he also does not deny implicating Plaintiff. *Id.* at p. 27-30.

Due to the difficulty of obtaining the confidential information related to his complaint, Plaintiff moved for appointment of counsel on February 11, 2020. (Doc. 37). After a hearing on the matter, the Court granted Plaintiff's motion. (Doc. 40). Shortly thereafter, the parties jointly moved for a protective order, which the Court granted on May 1, 2020. (Doc. 47). The protective order designated certain information as confidential material, for attorneys' eyes only ("AEO"). *Id.* This information included the Internal Investigative Report; it also limited Plaintiff's counsel from disclosing to Plaintiff the names of any inmate listed in the report. *Id.* All parties are further required to redact information related to security threat groups, correctional officers' personal information,

and the names, nicknames, or statements of confidential informants listed in the report. *Id*.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 45(a) permits a party to issue a subpoena to command production of documents or other tangible material in a person's possession or control. *See* FED. R. CIV. PROC. 45(a). A party seeking to quash a subpoena bears the burden of demonstrating that the subpoena requires the disclosure of privileged information or subjects the party to an undue burden. *See AF Holdings LLC v. Doe*, No. 12 C 4222, 2012 WL 5520861, *1 (N.D. Ill. Nov. 13, 2012). "When a court is confronted with a motion to quash such a subpoena, its duty is not to deny any discovery, but to reduce the demand to what is reasonable, considering the discoverer's needs and the discoveree's problems." *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560 (7th Cir. 1984).

When a party issues a subpoena to a non-party, that non-party may move to quash the subpoena pursuant to Federal Rule of Civil Procedure 45(d)(3)(iv). Courts are particularly concerned with undue burden or expense to non-parties from compliance with a subpoena. *See Uppal v. Rosalind Franklin Univ. of Med. and Sci.*, 124 F. Supp.3d 811, 813 (N.D. Ill. 2015) (internal citations omitted). Accordingly, that concern is afforded a *special weight* in a court's evaluation of a motion to quash. *Id*. (emphasis in original). Unlike more permissive rules of civil procedure, Rule 45 requires a court to quash or modify a subpoena which subjects the non-party to undue burden or expense. *Id*. Though Plaintiff served Defendant Wills with the subpoena at issue while Defendant Wills was a non-party to this case, Plaintiff has since added Defendant Wills to the present litigation.

*See* (Doc. 111). Therefore, the Court no longer applies the same special weight regarding the potential burden or expense imposed on Defendant Wills incurred while complying with the subpoena; instead, the Court turns to the more permissive Federal Rule of Civil Procedure 26 for its analysis.

Unlike Rule 45, Rule 26 (c) grants the Court the discretion to quash or modify a subpoena if it is unduly burdensome or expensive. Under Rule 26, parties may obtain discovery into any non-privileged matter relevant to a party's claim or defense so long as that discovery is proportional to the needs of the case. *See Pegues v. Coe*, No. 3:16-CV-00239-SMY-RJD, 2017 WL 4922198, at *1 (S.D. Ill. Oct. 31, 2017)(citing FED. R. CIV. PROC. 26(1)). The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. *See* FED. R. CIV. PROC. 26 advisory committee note to 1980 amendment. Accordingly, the relevancy requirement is broadly construed to include matters "that bear on, or that could reasonably lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citation omitted); *see also*, FED. R. CIV. PROC. advisory committee note to 1946 amendment. Nevertheless, the relevancy requirement should be firmly applied, and a district court should not neglect its power to restrict discovery when necessary. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 320 (7th Cir. 2003); *Stephenson v. Florilli Transportation, LLC*, No. 3:18-cv-0103-NJR-DGW, 2018 WL 4699863, at *1 (S.D. Ill. Oct. 1, 2018).

The Court must also consider whether the requested discovery is unreasonably cumulative or duplicative, whether there have been ample opportunities to discover the information, or whether any benefit is outweighed by the burden or expense of the proposed discovery. *See* FED. R. CIV. PROC. 26(b)(2). The rules strongly encourage the Court to balance the needs of both parties.

ANALYSIS

## I.   Whether Plaintiff's Need for the Confidential Informants' Identities Outweighs Defendant Wills's Burden in Producing that Information

Defendant Wills asserts that the Court should quash Plaintiff's subpoena because it exposes him to undue burden; according to Defendant Wills, the subpoena amounts to a "fishing expedition." (Doc. 59, p. 3). Furthermore, Defendant Wills states that providing the identification of the confidential informants could create a security concern for those inmates, as well as at the locations in which the inmates are imprisoned. *Id*. at p. 6. In comparison to what Defendant Wills asserts is little need for the requested information, Defendant Wills characterizes the burden imposed in producing the identities as significant.

While Rule 26 provides courts with the discretion to quash or modify unduly burdensome subpoenas, not all burden related to complying with a subpoena will justify such an action; the pertinent question is whether the burden of compliance exceeds the benefit of the production of the material sought. *See Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). This test requires weighing the following factors: (i) whether the party subpoenaed is a non-party to the underlying suit, (ii) whether the

information requested is relevant, (iii) whether the party requesting the information has a substantial need for it, (iv) whether the document request is overly broad, (v) whether the time period the request covers is reasonable, (vi) whether the request is sufficiently particular, and (vii) the extent to which the request imposes a burden on the subpoenaed party. *See In re Depakote v. Abbott Labs., Inc.*, Case No. 14-CV-847-NJR-SCW, 2016 WL 4257520, *1 (S.D. Ill. May 24, 2016) (internal citations omitted). Defendant Wills is now a party to this suit. Furthermore, Plaintiff requests only the identities of the two unnamed confidential informants. The Court therefore finds that only factors (ii), (iii), and (vii) are at issue in this case.

In order to succeed on this claim, Plaintiff must demonstrate that his protected activity was the "but-for" cause of his punishment, regardless of Defendants' evidence of alternative reasons for their actions. *See Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). To the extent that Defendants provide evidence that they acted with legitimate disciplinary motivations in punishing Plaintiff, Plaintiff must then show that those motivations were pretextual. *Id.* Whether CI 1 and CI 2 identified Plaintiff as involved in tobacco trafficking in any undocumented interview is therefore a vital question that Plaintiff believes he must investigate if he is to prove his case at trial. It is thus clear that the identities of the confidential informants could lead to the discovery of admissible evidence, making them relevant for the purposes of Rule 26. *See Oppenheimer Fund, Inc.,* 437 U.S. at 351 (internal citation omitted).

Plaintiff has also demonstrated significant need for the requested identities. The extent to which Plaintiff is able to obtain the requested information by other means, and

whether or not Plaintiff has attempted to do so, is an important consideration for evaluating Plaintiff's need for the requested information. *See, e.g., Brueder v. Board of Trustees of Community College District No. 502*, No. 15 CV 9323, 2020 WL 4676666, *2 (N.D. Ill. Aug. 12, 2020)(noting that the plaintiff had already exhausted alternative avenues to obtain responsive documents, thus making the requested discovery less cumulative because the plaintiff did not have access to those sources). Here, Plaintiff has made considerable efforts to obtain the information he requires through other means, including querying Defendants Dye and Hughey, and Officer McCarthy, on the information gleaned from their interviews with CI 1 and CI 2. However, none of the deponents could remember the details of the interviews; Defendant Hughey further did not remember whether he was present in the interview, and Officer McCarthy could not remember the CIs' names. As other avenues of obtaining the identities of CI 1 and CI 2 are foreclosed to Plaintiff, the Court finds that he has a substantial need for the information requested through this subpoena.

Lastly, though the Court finds that Defendant Wills faces a heavy burden in complying with the subpoena, it also determines that this burden does not outweigh Plaintiff's need for this pertinent information. Identifying the unnamed confidential informants could inhibit the free flow of information between investigators and other informants in the prison. *See United States v. Jefferson*, 252 F.3d 937, 942 (7th Cir. 2001). Potential identification is not the only possible factor chilling further cooperation between investigators and prisoners as the realities of prison life make the danger of retaliation against informants "much more than a theoretical possibility." *Dawson v.*

*Smith*, 719 F.2d 896, 898 (7th Cir. 1983) (internal quotations omitted). As such, identification could risk physical harm to the informants at the prisons in which they are housed. *See, e.g.*, *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985)(upholding the denial of a motion to compel prison investigative reports containing information regarding confidential informants). While these considerations are typically significant factors in favor of quashing a subpoena, certain circumstances also mitigate the significance of these factors in the instant case. As Plaintiff points out, the Court has already entered a protective order limiting information pertaining to confidential informants to an AEO basis. *See* (Doc. 47); (Doc. 119, p. 4). In doing so, the Court could better balance Plaintiff's right to full effective assistance of counsel and the necessity of protecting informants' identities. *See Wagner v. Williford*, 804 F.2d 1012, 1017-18 (7th Cir. 1986) (internal citations omitted). As this protective order is designed to prevent the spread of knowledge regarding the informants' identities beyond the attorneys in this case, it substantially reduces the burden Defendant Wills faces in complying with the subpoena. Accordingly, the Court finds that Plaintiff's need for the identities of CI 1 and CI 2 outweigh the burden to Defendant Wills in providing that information.

## II.  Whether Defendant Wills may Exert the Informers' Privilege in order to Prevent Production

During a February 26, 2021 hearing on the motion to quash, Defendant Wills invoked the informers' privilege in order to resist producing the confidential informants' identities. The Government may assert this privilege in order to withhold the identification of persons who furnish information to law enforcement officers from

disclosure. *See Rovario v. United States*, 353 U.S. 53, 60 (1957). Though the privilege is rooted in criminal law, it is also applicable in civil cases. *See Dole v. Local 1942, Intern. Broth. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989). The Government may exercise this privilege as of right; the privilege is designed to reflect the "common sense" notion that informants whose identities are revealed may face reprisal, which, in turn, could chill further communication between civilians and law enforcement officers. *Id.*; *see also Rovario*, 353 U.S. at 60.[2] The Supreme Court has recognized that informants in drug-related cases face a unique risk from disclosure of their identities, as these cases often involve violent reprisals against revealed informants. *See United States v. Berder*, 5 F.3d 267, 269 (7th Cir. 1993). *See also Peate v. McCann*, 294 F.3d 879, 885 (7th Cir. 2002)(holding that the Government has a strong interest in maintaining the confidentiality of files containing sensitive information regarding on-going investigations).

Although the privilege is particularly strong in civil cases where the party seeking the information is less likely to have a Constitutional right to the confrontation of witnesses, it is nevertheless limited by certain vital considerations. *See Dole*, 870 F.2d at 372. Chief among these considerations is fundamental fairness. *See Rovario*, 353 U.S. at 60. The privilege must yield to a balanced measure of the issues and the fair administration of justice. *See Dole*, 870 F.2d at 372. Accordingly, when the information requested is

---

[2]     Plaintiff argues that Defendant Wills waived this privilege by not raising it in his initial motion to quash. *See* (Doc. 119, p. 5). However, because the Government may invoke this privilege as of right, the Court finds that it has not waived this privilege by omission through Defendant Wills's initial briefing.

relevant and helpful to the fair determination of a cause, the privilege gives way. *See Rovario*, 353 U.S. at 61.

When determining whether fundamental fairness requires the informers' privilege to yield in a particular case, much as in a Rule 26 analysis, courts balance the moving party's need for the requested information against the non-moving party's objection to disclosure. *See Moore v. Liszewski*, Case No. 11-cv-1148-MJR-SCW, 2012 WL 12943081, *1 (S.D. Ill. Nov. 13, 2012). For instance, in *Moore*, the Court evaluated the type of information the plaintiff sought, including whether the sensitive material included potential gang affiliations or other discrete security issues. *Id*. The Court also considered whether the defendant provided evidence to show that the plaintiff's retaliation against the unnamed witness was a likely possibility. *Id*. Moreover, the Court noted that "safeguards" against retaliation could further reduce that risk. *Id*. Lastly, the defendants provided no evidence that the confidential informants were promised confidentiality in order to encourage discussion with investigators. *Id*. These factors weighed heavily in favor of disclosing the requested investigatory files. *Id*. The Court determined that holding otherwise would, "in essence, be saying that anytime the prison conducts an investigation and produces a report, those reports can never be disclosed because the prison conducted an investigation, and that is clearly not the rule articulated by the Seventh Circuit." *Id*.

Plaintiff has demonstrated that the identities of CI 1 and CI 2 is both relevant and helpful to the fair determination of his cause. If Plaintiff is unable to identify either confidential informant, he will lack the information necessary to determine whether

Defendants Dye and Hughey targeted him for drug trafficking pretextually, rather than on the basis of bona fide reports. As Plaintiff must establish this element in order to face any chance of success in his litigation, the fair adjudication of this case requires that the informers' privilege yield in this given instance. Plaintiff seeks only the confidential informants' names; he has not requested further details which might raise a discrete security threat, such as gang affiliation or other connections between the informants and the prison population. Defendant has provided little evidence regarding the risk of retaliation and has not demonstrated that the confidential informants at issue were promised anonymity in order to encourage their discussions with investigators. Furthermore, the disclosure of this information on an AEO basis will further reduce the risk of retaliation. Accordingly, the Court finds that the informers' privilege does not justify granting Defendant Wills's motion to quash.

## CONCLUSION

For the above-stated reasons, Defendant Wills's motion to quash (Doc. 59) is **DENIED.** Any information gleaned from the subpoena at issue pertaining to confidential informants is to be designated "Confidential – FOR ATTORNEYS' EYES ONLY."

**IT IS SO ORDERED.**

**DATED:  September 29, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.09.29 09:21:54 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**