UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:19-cv-00444-GCS |
| ) | |
| JONATHAN DYE and KYLE ) | |
| HUGHEY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Terrance Johnson is an inmate in the custody of the Illinois Department of Corrections ("IDOC") and is currently housed at Hill Correctional Center. On April 24, 2019, Plaintiff filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants Dye and Hughey retaliated against him and denied him due process during a tobacco trafficking investigation at Menard Correctional Center ("Menard"). (Doc. 1). Defendants Dye and Hughey have asserted that they identified Plaintiff as involved in the tobacco trafficking on the basis of confidential informants, two of whom were initially unnamed in the discovery provided to Plaintiff. (Doc. 125).

Plaintiff served a subpoena on Warden Anthony Wills prior to adding him as a party to this suit. Through this subpoena, Plaintiff sought the disclosure of the two unnamed informants. (Doc. 125). Defendant Wills moved to quash the subpoena. (Doc. 57). During the pendency of the motion to quash, Plaintiff added Defendant Wills to the

lawsuit. (Doc. 111). Because Defendant Wills became a party to the litigation, the Court denied the motion to quash. (Doc. 120).

Defendant Wills timely filed a supplemental response to Plaintiff's subpoena, identifying CS 1,[1] an inmate in the custody of the IDOC, as one of the informants. (Doc. 125). Before the Court is Plaintiff's motion to depose CS 1. *Id*. For the reasons delineated below, the motion to depose is **GRANTED.**

## BACKGROUND

Plaintiff alleges that during the investigation of tobacco trafficking at Menard, Defendants Hughey and Dye issued Plaintiff a disciplinary report predicated on insufficient facts, false statements, and information from unknown confidential informants. (Doc. 14, p. 2). The investigation at issue began after an officer found chewing tobacco at Menard in May 2018. (Doc. 64, p. 6). The investigation indicates that the officer who found the tobacco followed a lead provided by a confidential source. *Id*.

The disciplinary ticket received by Plaintiff states that two confidential sources identified Plaintiff as responsible for the tobacco trafficking. (Doc. 64, p. 6). One of the sources allegedly implicated Plaintiff prior to the discovery of tobacco, while the other identified Plaintiff during the following investigation. *Id*. The unnamed confidential source allegedly identified Plaintiff as a tobacco trafficker after Plaintiff denied knowledge of the trafficking. (Doc. 64, p. 7, 9). Defendant Wills states that he has no

---

[1] Pursuant to a protective order, the parties have identified the confidential source by name in discovery, on an Attorneys' Eyes Only basis. (Doc. 47). As such, the name shall remain confidential in this Memorandum and Order.

information or knowledge regarding the identity of one of the informants; however, the other informant is CS 1. (Doc. 125, p. 2).

Due to the difficulty of obtaining the confidential information related to his complaint, Plaintiff moved for appointment of counsel on February 11, 2020. (Doc. 37). After a hearing on the matter, the Court granted Plaintiff's motion. (Doc. 40). Shortly thereafter, the parties jointly moved for a protective order, which the Court granted on May 1, 2020. (Doc. 47). The protective order designated certain information as confidential material, for attorneys' eyes only ("AEO"). *Id*. This information included the Internal Investigative Report; it also limited Plaintiff's counsel from disclosing to Plaintiff the names of any inmates listed in the report. *Id*. All parties are further required to redact information related to security threat groups, correctional officers' personal information, and the names, nicknames, or statements of confidential informants listed in the report. *Id*.

## LEGAL STANDARDS

Parties must request leave of the Court in order to take the deposition of a person currently confined in prison. *See* FED. R. CIV. PROC. 30(a)(2)(B). The Court evaluates a motion to depose a person confined in prison under the standards outlined in Rule 26(b)(1) & (2). *See* FED. R. CIV. PROC. 30(a)(2); *see also Cooper v. Roach*, 19-cv-159-jdp, 2019 WL 5682899, at *1 (W.D. Wisc. Nov. 1, 2019). Under Federal Rule of Civil Procedure 26, parties may obtain discovery into any non-privileged matter relevant to a party's claim or defense so long as that discovery is proportional to the needs of the case. *See Pegues v. Coe*, No. 3:16-CV-00239-SMY-RJD, 2017 WL 4922198, at *1 (S.D. Ill. Oct. 31, 2017)(citing

FED. R. CIV. PROC. 26(1)). The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. *See* FED. R. CIV. PROC. 26 advisory committee note to 1980 amendment. Accordingly, the relevancy requirement is broadly construed to include matters "that bear on, or that could reasonably lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citation omitted); *see also* FED. R. CIV. PROC. advisory committee note to 1946 amendment. Nevertheless, the relevancy requirement should be firmly applied, and a district court should not neglect its power to restrict discovery when necessary. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 320 (7th Cir. 2003); *Stephenson v. Florilli Transportation, LLC*, No. 3:18-cv-0103-NJR-DGW, 2018 WL 4699863, at *1 (S.D. Ill. Oct. 1, 2018).

The Court must also consider whether the requested discovery is unreasonably cumulative or duplicative, whether there have been ample opportunities to discover the information, or whether any benefit is outweighed by the burden or expense of the proposed discovery. *See* FED. R. CIV. PROC. 26(b)(2). The rules strongly encourage the Court to balance the needs of both parties. While a deposition may be limited, the non-moving party must demonstrate exceptional circumstances in order to justify completely prohibiting the moving party from taking a deposition. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002).

## ANALYSIS

Both Plaintiff and Defendant Wills refer to arguments asserted in previous motions in order to support their positions. Plaintiff notes that he is willing to conduct this deposition virtually and that the transcripts of the deposition would be marked Attorneys' Eyes Only pursuant to the parties' protective order, as was the case when Plaintiff first moved to depose informants currently confined in prison. (Doc. 125, p. 2). In contrast, Defendant Wills states that he maintains his previously articulated objections described in his initial motion to quash and supplement thereto. (Doc. 129, p. 3).

As outlined in their prior motions, the parties dispute whether the deposition is necessary for Plaintiff to succeed on his claim, or whether the request to depose CS 1 is merely a "fishing expedition." (Doc. 59, p. 3). Plaintiff asserts that the informants who allegedly identified him as trafficking tobacco will provide information critical to his claim that Defendants Dye and Hughey retaliated against him in violation of the First Amendment. (Doc. 56, p. 2; Doc. 72, p. 2). In order to succeed on this claim, Plaintiff must demonstrate that his protected activity was the "but-for" cause of his punishment, regardless of Defendants' evidence of alternative reasons for their actions. *See Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). To the extent that Defendants provide evidence that they acted with legitimate disciplinary motivations in punishing Plaintiff, Plaintiff must then show that those motivations were pretextual. *Id*. Whether CS 1 identified Plaintiff as involved in tobacco trafficking in any undocumented interview, and whether he did so under coercion, are therefore vital questions that Plaintiff believes he must investigate if he is to prove his case at trial.

The extent to which Plaintiff may obtain the requested information by other means, and whether or not Plaintiff has attempted to do so, does bear on the Court's evaluation of the proportionality of Plaintiff's request. *See, e.g.*, *Breuder v. Board of Trustees of Community College District No. 502*, No. 15 CV 9323, 2020 WL 4676666, at *2 (N.D. Ill. Aug. 12, 2020)(noting that the plaintiff had already exhausted alternative avenues to obtain responsive documents, thus making the requested discovery less cumulative because the plaintiff did not have access to those sources). This evaluation is as applicable to topics discussed in deposition as it is to the discovery of documents and other tangible items. *See Travelers Property Casualty Insurance Company*, No. 12 C 02386, 2013 WL 1343163, at *3 (N.D. Ill. Apr. 2, 2013). If Plaintiff is able to obtain the information he seeks through a means less costly or less of a security risk than a deposition, then the balancing analysis of weighing the harm to Defendant Wills versus the benefit to Plaintiff would tilt in Defendant Wills's favor.

The Court granted Plaintiff's initial motions to depose a person confined in prison in large part because no interview transcript existed by which Plaintiff could glean whether the informants identified him as trafficking in tobacco. *See* (Doc. 109). Here, Defendant Wills provides no evidence that Plaintiff may obtain the information necessary to his case by other means. Accordingly, the Court finds that the balance of the equities favors Plaintiff, as the information could prove vital to his case.

Defendant Wills also asserted in his initial motion to quash that permitting a deposition of an unnamed informant would create a security threat by providing inmates with access to what information is typically gathered during an investigation and how

the department conducts such investigations. (Doc. 70, p. 3). The Court acknowledges that identifying CS 1 as a confidential informant by requiring his deposition could inhibit the free flow of information between investigators and other informants in the prison. *See United States v. Jefferson*, 252 F.3d 937, 942 (7th Cir. 2001). Potential identification is not the only possible factor chilling further cooperation between investigators and prisoners as the realities of prison life make the danger of retaliation against informants "much more than a theoretical possibility." *Dawson v. Smith*, 719 F.2d 896, 898 (7th Cir. 1983) (internal quotations omitted). As such, participating in a deposition could substantially endanger CS 1's physical security at the prison in which he is housed. *See, e.g., Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985)(upholding the denial of a motion to compel prison investigative reports containing information regarding confidential informants).

While these considerations typically weigh in favor of denying a motion to depose, certain circumstances also mitigate the significance of these factors in the instant case. First, the Court has already entered a protective order limiting information pertaining to confidential informants to an AEO basis. *See* (Doc. 47). That order could easily be expanded to include information from any deposition. In doing so, the Court could better balance Plaintiff's right to full effective assistance of counsel and the necessity of protecting informant identity. *See Wagner v. Williford*, 804 F.2d 1012, 1017-18 (7th Cir. 1986) (internal citations omitted). Second, as in the case of the previous motions to depose, Plaintiff's attorneys have again requested that the depositions be conducted virtually, further reducing the likelihood that another inmate could see CS 1 being deposed by lawyers and infer that CS 1 is a confidential informant or witness in a case.

(Doc. 125, p. 3). Rather, if such a deposition is conducted virtually, it would simply appear as if CS 1 had a remote hearing in court, which would not appear to be out of the ordinary. The Court finds that these factors considerably reduce the burden to Defendant Wills and CS 1 regarding the requested deposition.

In an abundance of caution, the Court limits the topics in the deposition to whether CS 1 identified Plaintiff during the tobacco trafficking investigation and whether he was coerced to identify Plaintiff or other inmates. Furthermore, Plaintiff may not attend this deposition, and any transcript of the deposition or information gleaned from the deposition is to be marked confidential, on an AEO basis.

## Conclusion

For the above-stated reasons, Plaintiff's motion to depose an inmate currently confined in prison (Doc. 125) is **GRANTED.** Plaintiff is not permitted to attend this depositions, and any transcript of this deposition is to be marked "Confidential – FOR ATTORNEYS' EYES ONLY."

**IT IS SO ORDERED.**

**DATED:  December 7, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.12.07 13:29:53 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**